LEVAL, Circuit Judge,
concurring:
I concur in my colleagues’ opinion. I agree fully that the Complaint plausibly states a claim under 42 U.S.C. §§ 227(b)(1)(C) and (a)(5), as elucidated by *98 the 2006 Rule promulgated by the Federal Communications Commission (FCC or the Commission), 71 Fed. Reg. 25967, 25973 (May 3, 2006).
I write separately, however, speaking for myself alone, and speaking only to state courts and federal courts outside this circuit, to air a somewhat different possible understanding of the 2006 Rule, which, while supporting the same conclusion as to the sufficiency of the Complaint, may better reflect the text of the Commission’s Rule.
The Complaint alleges that the Defendant, Boehringer Ingelheim Pharmaceuticals, Inc., sent an unsolicited fax message (without the required opt-out notice) to the Plaintiff, Physicians Healthsource, Inc. (as well as to other doctors).[1] The fax message invited Dr. Jose Martinez (apparently one of the doctors of Physicians Healthsource) to a free dinner and lecture sponsored by the Defendant, at which David Portman, M.D., would discuss Female Sexual Dysfunction (FSD) and Hypoactive Sexual Desire Disorder (HSDD).[2] At the Defendant’s request, in deciding the motions to dismiss the Complaint, the court took judicial notice of records of the Food and Drug Administration (FDA) showing that the Defendant had submitted an application for the FDA’s approval to market a new drug (flibanserin) for the treatment of HSDD, the condition that was to be the subject of the free lecture.
The Defendant argued in the district court that because its fax transmission consisted of an invitation to a free dinner and lecture, and did not on its face make any suggestion of a commercial nature or refer in any way to flibanserin, it did not come within the statute’s definition of an unsolicited advertisement: “material advertising the commercial availability or quality of any property, goods, or services.” 47 U.S.C. § 227(a)(5). The Plaintiff countered that the FCC’s 2006 Rule made clear, for purposes of the statute, that an unsolicited facsimile message promoting free goods and services is an unsolicited advertisement. The Plaintiff argued further that, given the Defendant’s pending application for FDA approval to market a drug for the treatment of HSDD, and the allegation of an invitation addressed to doctors to hear a medical lecture about HSDD, the Complaint plausibly alleged an overall marketing campaign and commercial purpose to get the doctors to prescribe the Defendant’s drug to patients suffering from HSDD, once the Defendant obtained FDA approval for the drug. The district court accepted the Defendant’s arguments and dismissed the Complaint.
The majority opinion reverses the district court’s dismissal of the Complaint, essentially adopting the Plaintiffs fallback argument — that, in view of the Defendant’s intention to market a drug for the treatment of HSDD, its offer of a free seminar for doctors discussing HSDD is plausibly alleged to be a commercially motivated advertisement of its product. On the other hand, the majority opinion rejects the Plaintiffs argument that the FCC’s 2006 Rule treats this offer of a free seminar per se as an advertisement of “the commercial availability” of a product. It reasons that the fax offering free goods or services would constitute an advertisement only if the offer of the free seminar turned out to be a pretext or prelude for a commercial promotion, and asserts that the Defendant “can rebut such an inference [of *99 intent to promote a commercial product] by showing [after discovery] that it did not or would not advertise its products or services at the seminar.” Maj. Op. 95. Although recognizing that “[businesses are always eager to promote their wares and usually do not fund presentations for no business purpose,” the opinion asserts that, if the defendant can show after discovery that at the free dinner and seminar no reference whatsoever was made to the Defendant’s drug for treatment of HSDD (or any other products or services it offered), the Defendant would prevail in the litigation. Id. at 95, 97.
I agree fully with the majority’s conclusion that the Complaint, as supplemented by the information about the Defendant’s commercial product that the Defendant added to the record on the motion to dismiss, plausibly supports an intention on the part of the Defendant to foster future sales of its drug. It seems obvious that, when a pharmaceutical company, which is preparing to market a drug for the treatment of HSDD, invites doctors to a free dinner and lecture on HSDD, the objective of the event is to get doctors to eventually prescribe the company’s drug to their patients, even though the company might be forced by legal requirements not to speak about the drug itself (as opposed to the condition) until FDA approval is secured.
I believe, in addition, that other courts might read the FCC’s 2006 Rule to mean that, at least when sent by commercial, profit-motivated entities, faxes offering free goods or services are deemed to be advertisements (and “unsolicited advertisements” if sent without the prior permission of the recipient), regardless of whether the offer of free goods and services was a pretext or preliminary to explicit promotion of commercial products and services.
In enacting the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, Congress undertook to limit the use in commerce of certain methods of communication that impose costs, hardships, and annoyances on unwilling recipients. Section 227 focuses, in part, on the transmission of “unsolicited advertisement^]” to “telephone facsimile machinefs]” (fax machines).[3] The sending of “unsolicited advertisements” to a fax machine is ex-' pressly prohibited except in specified circumstances (which include the requirement that the message include a notice (conforming to specifications) that the recipient may opt out of further receipt of such messages). See . 47 U.S.C. § 227(b)(1)(C) (“It shall be unlawful for any person within the United States ... to send, to a telephone facsimile machine, an unsolicited advertisement, unless.... ” (emphasis added)).[4]
The statute defines “unsolicited advertisement” to mean “any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that *100 person’s prior express invitation or permission.” Id. § 227(a)(5). The statute goes on to direct the FCC to “prescribe regulations to implement the requirements of this subsection” and to “initiate a rulemak-ing proceeding concerning the need to protect residential telephone subscribers’ privacy rights to avoid receiving telephone solicitations to which they object.” See id. §§ 227(b)(2) and (c)(1). The FCC promulgated the 2006 Rule.
The 2006 Rule is not written in the manner of a conventional regulation. It is a rambling 22-page discussion, in which some sentences assert normative rules and definitions, others describe arguments that have been submitted to the agency by commentators and the Commission’s responses to them, and yet others explain the Commission’s observations and reasoning that led it to its conclusions.
A chapter of the 2006 Rule specifically addresses facsimile messages that contain “Offers for Free Goods and Services,” and the question whether such messages constitute “unsolicited advertisements.”[5]
If one reads this passage precisely, sentence by sentence, giving each sentence its natural meaning, it can be read to establish a rule that differs significantly from the majority opinion’s interpretation of it.
The first sentence can be read to state a categorical conclusion as to the meaning of “unsolicited advertisement” as applied to faxes that offer free goods or services.
The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA’s definition.
2006 Rule, 71 Fed. Reg. at 25973 (emphasis added).
The next four sentences appear to recount what the Commission observed and how those observations led it to adopt the categorical rule stated in the first sentence. These four sentences explain:
In many instances, “free” seminars serve as a pretext to advertise commercial products and services. Similarly, “free” publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the “quality of any property, goods, or services.”

Id.

The final sentence of the passage follows the Commission’s factual observations de *101 scribed in the prior four sentences with the word, “Therefore,” and then essentially restates the categorical rule of the first sentence — that facsimile messages offering free goods and services are treated as advertisements,[6] so that the sender must “obtain the recipient’s permission beforehand, in the absence of an [established business relationship].” Id.
In view of the apparently categorical assertion of the first sentence (repeated in substance in the final sentence) — that “facsimile messages that promote goods or services even at no cost ... are unsolicited advertisements under the TCPA’s definition” — another court might well disagree with the majority opinion’s view that the Rule “does not aim at faxes promoting free seminars per se.” Maj. Op. 96. Nothing in the text suggests that the Commission’s observation of the frequency with which free offers lead to commercial solicitation was intended as limiting the Commission’s categorical proposition announced in the first sentence, rather than providing an explanation for it.
In addition, a court might conclude that the majority opinion’s selective quotation and characterization of the last two sentences of the passage on free goods and services change their meaning. The majority opinion describes the 2006 Rule as stating that, because of the reasonableness of the presumption adopted by the FCC that messages advertising free seminars in fact describe the “quality of any property, goods, or services,” such messages “potentially violat[e] the TCPA.” Id. at 95. The 2006 Rule, however, after noting the reasonableness of that presumption, goes on to say that fax messages offering free goods and services “[tjherefore ... would require the sender to obtain the recipient’s permission beforehand.” 2006 Rule, 71 Fed. Reg. at 25973 (emphasis added). This passage, read literally, says that, unless the recipient gave permission, the fax message offering free goods or services does violate the TCPA — not that it “potentially” violates the TCPA.
The 2006 Rule, in other words, can be read to say, in sum: Because of the frequency, observed by the Commission, that messages offering free goods or services in fact mask or precede efforts to sell something, the Commission has adopted a prophylactic presumption that fax messages offering free goods or services are advertisements and thus are prohibited by § 277 (unless they are either sent with the consent of the recipient or meet the requirements for the statutory exception).
One might ask why the Commission would adopt this presumption rather than letting it be determined in litigation whether one who accepted the offer of free goods or services would ultimately confront an attempt to sell something. The Commission did not explain its reasons. One can well surmise, however, that because the statute generally offers plaintiffs a maximum award of $500 in statutory damages,[7] the statute’s efficacy in controlling nuisance faxes would be nullified if a *102 plaintiff needed to spend thousands of dollars in discovery litigation to win a much smaller award. And as to the risk that a sender might be held liable in circumstances where its offer of free goods did not lead to an attempt to sell, the Commission could take comfort in (1) its determination that this would occur infrequently, and (2) the near certainty that the damages award inflicted on the defendant would be negligible — even less than the litigation cost of making a motion to dismiss.
I recognize that there is a significant argument against this literal reading of the Commission’s Rule. If this passage is read to apply universally to all “facsimile messages that promote goods or services ... at no cost,” this would mean that fax messages sent by charitable, nonprofit entities for the sole purpose of alerting intended beneficiaries to the availability of charitable offerings would incur liability. Because the governing statute imposes liability for fax transmissions only on “material advertising the commercial availability or quality of any property, goods, or services,” see § 227(a)(5), it is at least doubtful whether the Commission can lawfully impose a rule requiring that the statute be read to impose liability for faxes sent by charitable nonprofit organizations with no objective other than to give away free goods or services.
There are, however, answers to this objection. Notwithstanding the breadth of the Commission’s language in the first and last sentences of the quoted paragraph concerning Offers for Free Goods and Services, it is doubtful whether the Commission intended this broad categorical rule to apply to offers of free goods and services by nonprofit entities. Both the statute[8] and the 2006 Rule communicate an intention that nonprofits be treated differently, at least in some respects, from commercial entities. In a separate portion of the 2006 Rule, the Commission set forth some discussion of how the statute treats nonprofits, suggesting that nonprofits are not covered by the otherwise categorical rule treating faxes offering free goods and services as advertisements.[9]
While neither the TCPA nor its amendments carve out an exemption for nonprofits from the facsimile advertising rules, the Commission agrees with those petitioners that argue that messages that are not commercial in nature— which many nonprofits send — do not constitute “unsolicited advertisements” and are therefore not covered by the facsimile advertising prohibition. (... [Consistent with the language of the TCPA, the Commission does not intend for the clarifications in this Order to result in the regulation of noncommercial speech as commercial facsimile messages under the TCPA regulatory scheme.) The Commission clarifies that messages that do not promote a commercial product or service, including all messages involving political or religious discourse, such as a request for a donation to a political campaign, political action committee or charitable organiza *103 tion, are not unsolicited advertisements under the TCPA. (... [T]he fact that a political message .contains an offer to attend a fundraising dinner or to purchase some other product or service in connection with a political campaign or committee fundraiser does not turn the message into an advertisement for purposes of the TCPA’s facsimile advertising rules.)
2006 Rule, 71 Fed. Reg. at 25972.
The Commission’s observations about nonprofits in this passage — that they send noncommercial messages and that such messages, including, for example, offers to attend fundraising dinners, are not advertisements — seem inconsistent with applying to nonprofits the apparently unqualified rule in the provision regarding Offers of Free Goods and Services. As a result, a court might conclude that the Commission intended the “Free Goods and Services” provision to apply to faxed offers by commercial entities, and not to similar faxes sent by nonprofits. It is, furthermore, unlikely that the 2006 Rule’s statement about the frequency with which offers of free goods and services are prefatory to commercial advertisement was predicated on the Commission’s observation of such offers by nonprofits. If a court, therefore, faced a suit brought against a nonprofit, based on a faxed offer to distribute free benefits, the court might conclude that the Commission’s 2006 Rule simply does not address that circumstance, so that the cas.e should be adjudicated solely by reference to the provisions of the statute, which would presumably support the conclusion that a nonprofit’s fax offering free goods or services was not an unsolicited advertisement.
While I concur in the panel opinion, ruling that the Complaint states a claim, I note that other courts might interpret the Commission’s 2006 Rule differently.

. In this opinion, the Defendants are collectively referred to as the "Defendant.”

. A note on the fax message indicated that the invitation was extended only to healthcare professionals, and not to their spouses or guests.

. The menace to the public represented by unsolicited advertisements sent by fax has mercifully diminished since the passage of the Act, as newer means of communication have supplanted the fax and far fewer consumers now possess fax machines. Nonetheless, usage of fax machines continues, and, for those who use them, the problem that led Congress to pass the Junk Fax Prevention Act persists.

. An "unsolicited advertisement" may not be sent to a fax machine unless (1) "the sender [has] an established business relationship with the recipient,” (2) the "sender obtained the number of the telephone facsimile machine” in a manner permitted by the statute, and (3) the unsolicited advertisement contains a "clear and conspicuous” opt-out notice on the first page which meets various statutory specifications. 47 U.S.C. §§ 227 (b)(1)(C) & (2)(D).

. The pertinent passage reads:

Offers for Free Goods and Services and Informational Messages

The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free ■ consultations or seminars, are unsolicited advertisements under the TCPA’s definition. In many instances, "free” seminars serve as a pretext to advertise commercial products and services. Similarly, "free” publications are often part of an overall marketing campaign to sell property, goods, or services.
For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the “quality of any property, goods, or services.” Therefore, facsimile communications regarding such free goods and services, if not purely "transactional,” would require the sender to obtain'the recipient's permission beforehand, in the absence of an [established business relationship],
2006 Rule, 71 Fed. Reg. at 25973.

. The final sentence includes the qualification, "if not purely ‘transactional.’ ” This qualification has no bearing on our analysis. The immediately preceding passage of the 2006 Rule explains that " ‘Transactional’ Communications,” those "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender[,] are not advertisements for purposes of the TCPA’s facsimile advertising rules.” 2006 Rule, 71 Fed. Reg. at 25972.

. Plaintiffs may recover their "actual monetary loss” or "$500 in damages for each [] violation, whichever is greater.” 47 U.S.C. § 227(b)(3)(B). Absent truly exceptional circumstances, $500 will likely far exceed a plaintiff's actual monetary loss caused by receipt of an unsolicited fax.

. See 47 U.S.C. § 227(a)(4) (defining “telephone solicitation,” another form of communication governed by the statute, expressly to exclude “a call or message ... by a tax exempt, nonprofit organization”).

. Section 227(b)(2)(F) of the statute authorizes the Commission to issue a regulation exempting nonprofit professional or trade associations from the requirement to include an opt-out notice on unsolicited fax advertisements sent to their members. The Commission declined to create that exemption, however, in part because of the benefits of the notice to recipients, and in part because inclusion of the notice is not a burdensome obligation. See 2006 Rule, 71 Fed. Reg. at 25971.